## In re Sundry Cemetery Trusts (No. 2)

*Samuel H. High, Jr.,* for petitioner.

TAXIS, P. J., January 31, 1972.—This petition seeks to terminate 108 separate, perpetual cemetery trusts of which petitioner, Industrial Valley Bank and Trust Company, is trustee. It is filed at the same time and with a comparable petition to consolidate 26 other similar trusts, of which petitioner is also trustee. In an opinion and decree entered this day on that petition, we have approved such consolidation, and we here incorporate what was said there as background to the present matter, which is somewhat more involved.

The petition to consolidate dealt with 26 small cemetery trusts averaging approximately $1,000 in principal value. The trustee desired to remain as trustee of those trusts, so long as they could be combined into one account for administration purposes. Permission was granted to do so. The present petition deals with a greater number of even smaller trusts, the largest of which has a principal balance of

$560.67. The smallest balance is $20.28, and the average of all is little more than $200. In most of the trusts there is also some unexpended income. The oldest dates from 1913, and many others are very old.

The petition recites that because of the small amount of principal, low income and a high cost of administration, the purposes for which the trusts were established, the maintenance of cemetery lots and graves, were not being effectively carried out. The petition alleges that it would be for the best interest of each trust that it be terminated and the principal and accumulated income be turned over to the various cemeteries in which the graves or plots to be maintined are situated, provided the cemeteries assume the trust obligations. It appears that each of the 35 cemeteries presently receiving distributions from these trusts has been contacted, and has consented to accept the principal and income on hand and use it for the continued maintenance or care of the graves and lots, or to purchase perpetual care thereof.

Upon initial consideration, the court doubted its authority to terminate the trusts and enter final decrees of distribution without requiring an accounting in each and, even more important, notice to all parties in interest. See 48 Cemetery Trust Funds, 17 Fiduc. Rep. 443, 445 (1963). While accountings in some simple form might have been feasible, proper notice to all parties in interest would have been a monumental task, perhaps impossible in some cases. We, therefore, conferred with counsel for petitioner, and he agrees that we should treat the petition as one to allow the present trustee to resign, and to name substituted trustees for these accounts without in any way terminating them as trusts. We will pass on the petition as though it were so drawn.

Knotty problems have long existed with respect to the administration of these small cemetery trusts. The obvious and growing difficulties involved in administering such funds have often resulted in far less than perfect realization of their objectives. From the practical standpoint, it cannot be expected that a trustee can study the application of each of the distributions made by it to be sure that it is correctly applied. In addition, the trusts are perpetual, and thus, unlike even long private trusts, time aggravates rather than cures the problem. It is true, of course, that individual or corporate trustees were appointed by many of the testators or settlors as insurance that the trust funds would be properly applied. In Devereux's Estate, 48 D. & C. 491, 506, it was said:

"We are also constrained to observe that the acceptance of the resignation of the present trustee and the substitution therefor of the cemetery company will be inimical to the best interests of the trust, and, we believe, contrary to testators' intent. The request would, if approved, remove the strongest impediment to the ability of the cemetery company completely to appropriate the trust to its own purposes. We likewise are of the opinion that the testators in setting up these trusts relied upon the supervisory jurisdiction of the trustee, which circumstance we are obligated to fulfill. The trustee's desire to resign is not consistent with its acceptance of the benefits it has received as coexecutor and cotrustee of other trusts under the will . . ."

At the present time, the exercise of the "supervisory jurisdiction" referred to is in many cases perfunctory at best. The reason for this is primarily economic and not always unjustifiable, by any means; one who creates a trust of a small amount must be charged with some knowledge that there are limits upon what he can expect it to accomplish and how carefully he can

expect it to be administered. As to the appropriation of the funds by a cemetery company acting as trustee, we do not suppose this to be as great a problem as might appear at first; many persons successfully make bequests directly to a cemetery company for the care of lots or contract with such companies for perpetual care, and the funds in the trusts now before the court would be no more vulnerable to appropriation than the others mentioned, and, perhaps, even less so, because they would in all cases remain impressed with the original trust. The above quotation also shows a belief by the court that a trustee should not equitably be allowed to accept profitable trusts and reject unprofitable ones contained in the same instrument. With this we agree in general; but there must be some practical limit, and petitioner appears to acknowledge its basic duty in this respect when it agreed to continue as trustee in the sister proceeding to consolidate, just as long as the trusts could be administered effectively.

Finding, as we do, that the objections referred to above concerning independent supervision and possible misappropriation are not insurmountable barriers to petitioner's prayer, it follows that the logical substituted trustee of a cemetery trust would be the cemetery company itself. This is not a new idea. Our legislature, in the Act of August 10, 1951, P. L. 1199, 53 PS §5651, et seq., conferred on both nonprofit and business corporations conducting cemeteries "heretofore or hereafter incorporated," the capacity to serve either as original trustee or, when a vacancy occurred, as a substituted or successor trustee for trusts " . . . for the care, maintenance, preservation, ornamentation or benefit of its cemetery or burial ground. . . ." This act has now been superseded by provisions of the Business Corporation Law of May 5, 1933, P. L.

364, art. II, sec. 209.2, 15 PS §1209.2, and of the Non-profit Corporation Law of May 5, 1933, P. L. 289, sec. 315, art. III, sec. 315, as amended, 15 PS §7315.

The relatively small number of cases decided under these acts, however, are not completely uniform in result. In Sixty Cemetery Trusts, 5 Fiduc. Rep. 505 (1952), the court allowed a corporate trustee of cemetery trusts to resign in favor of the cemetery company, which was then further authorized to invest its funds in the trust department of the resigning trustee in a custodian account. In Baer Trust, 5 Fiduc. Rep. 377 (1898) (O. C., Lancaster Co.), the title of a proceeding actually involving 42 cemetery trusts, the court at first refused to permit the resignation of the original trustee and transfer of the trusts to cemetery companies, holding that this would be contrary to the settlors' or testators' wishes, and that it would violate the duty to inspect and supervise. Upon exceptions to this decision, however, at 6 Fiduc. Rep. 263, the court reconsidered its first decision, and said, in part:

". . . in actual practice corporate trustees of cemetery trusts do not 'supervise and inspect' as we suggested they should . . . the conclusion that a corporate fiduciary of a cemetery trust has a duty to supervise and inspect is without authority."

The court stated that the Act of August 10, 1951, supra, while not mandatory, should be given effect so long as the court reasonably believes that the trust would not be adversely affected thereby. Resignation of the corporate trustee in favor of the cemetery company was, therefore, permitted. It is interesting to note that the same court refused to extend the above decision to a situation where the trust income was adequate to defray the annual upkeep charges of the cemetery: Baumgardner Trust, 6 Fiduc. Rep. 267 (1956). It appears that the present petitioner also rec-

ognizes this distinction, in remaining as trustee of the larger of the various trusts held by it.

In Brock Cemetery Trusts Case, 29 D. & C. 2d 263, resignation of a trustee of 15 cemetery trusts, totaling $2,900 in assets, was permitted, and the cemetery association was appointed successor trustee. President Judge Gangloff (O. C., Schuylkill Co.), said this, at page 266:

"Lengthy discussion of the aims of the parties before the court in this proceeding is unnecessary. Judicial notice may be taken of what admittedly is fact, namely, the administration of trust funds for perpetual care of individual cemetery lots has proved unsatisfactory over the years where the funds are held and administered by trustees limited in the use of income to a lot here and there. A more satisfactory way is to merge the trust fund into one common fund to be administered by a responsible cemetery association organized and obligated to care for and maintain the entire cemetery rather than an individual lot here and there. Cemetery trusts have become unpopular with corporate trustees primarily because of the difficulties encountered in caring for individual lots here and there and because the compensation generally does not measure up to the value of the services performed."

We note, with great respect, the two opinions of Judge Bolger (O. C., Philadelphia Co.), in 48 Cemetery Trust Funds, supra. The reasons for his refusal to allow resignation of the original trustees and appointment of the cemeteries as substituted trustees are clearly explained. However, the first opinion in that case achieved only the maintenance of an unsatisfactory status quo. Recognizing this when the matter was reconsidered upon exceptions, Judge Bolger increased the trustees' annual commissions on income to seven percent, and also appointed a cemetery trust

examiner to inspect the places of burial and to make periodic financial examinations of the assets comprising cemetery trusts. But we doubt that these measures are either fully satisfactory or permanent solutions or that they can be as effective as the procedures sought in the present two petitions. In the first place, we should strive to cut down the administrative costs of these trusts, not increase them. More important, many of the same advantages to be gained by the corporate trustee in combining the trusts it retains will be obtained if the trusts here before us are transferred to cemetery companies as trustees, for under the above-cited provisions of the corporation laws, they may then be combined, for administration and investment purposes, with other trust funds held by the cemetery company for similar purposes.

Accordingly, the petition is approved, and we enter the following

## DECREE

And now, January 31, 1972, upon petition of Industrial Valley Bank and Trust Company, trustee, and upon motion of Samuel H. High, Jr., attorney for petitioner, it is ordered, adjudged and decreed that the trustee is authorized and empowered to resign as trustee of the trusts hereinafter set out, and that the principal and accumulated income, if any, in each of said trusts be awarded to the cemetery company indicated, in trust for the purposes set forth in the trust instrument: . . .

And it is further ordered, adjudged and decreed that Industrial Valley Bank and Trust Company, trustee, shall obtain, from each substituted trustee, its bond, without surety, in a sum equal to twice the amount of the funds distributed to it, and a written acknowledgment that such funds shall be held per-

petually for the uses and purposes of the trust, such acknowledgment to constitute a full and complete release and discharge of the Industrial Valley Bank and Trust Company, trustee, from any and all responsibility or liability for each trust after the date of distribution.

And it is further ordered, adjudged and decreed that Industrial Valley Bank and Trust Company, trustee, shall furnish each substituted trustee with a copy of the trust instrument, certified by trustee as true and correct, under which the trust is administered.